UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Henry Flynn, Jr., | ) | Civil Action  No. 5:13-0597-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issues before the court are whether the decision is supported by substantial evidence, and whether the Commissioner's decision contains an error of law. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I.  Relevant Background

A.  Procedural History

On July 12, 2010, Plaintiff filed applications for DIB and SSI alleging a disability onset date of June 29, 2010. Tr. 128-32. After being denied both initially and on reconsideration, Tr.

49-55, on April 14, 2011,[1] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 86-90. On December 9, 2011, the ALJ conducted a hearing, taking testimony from Plaintiff. Tr. 25-41. The ALJ issued a decision on January 20, 2012, denying Plaintiff's claims. Tr. 12-19. The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on March 6, 2013.  ECF No. 1.

### B.  Plaintiff's Background and Medical History

#### 1.  Background

Plaintiff, born on July 4, 1955, was five days shy of 55 years old as of his alleged onset date of June 29, 2010. Tr. 128. He completed the ninth grade and did not complete any special job training or vocational school Tr. 177. Plaintiff's prior work history includes carpenter and truck driver. Tr. 179. He alleged that he stopped working on June 29, 2010, due to his medical conditions of diabetes, hypertension, kidney problems, high cholesterol, sleep issues, back pain, and leg bleeding. Tr. 191.

#### 2.  Medical History

Plaintiff was examined on September 27, 2008, by Dr. Meacher at Doctors Care. Tr. 270-71. Dr. Meacher noted that Plaintiff needed a regular doctor, and Plaintiff had exhausted his medication five days earlier but Plaintiff indicated he felt "fine." Tr. 270.  Dr. Meacher assessed Plaintiff with hypertension, hyperlipidemia, and Type II diabetes, and instructed Plaintiff to return in six days for follow up. *Id.*  Plaintiff returned to Doctors Care on October 2, 2008 for lab work. Tr. 267. The notes indicated Plaintiff was "doing well," and he needed clearance for DOT

---

[1] The Request for Hearing Acknowledgment is dated June 10, 2011. Tr. 86. However, the Acknowledgment reflects that Plaintiff's request was completed on April 14, 2011. *Id.*

[Department of Transportation] certification. *Id.* Plaintiff's assessment included diabetes mellitus-uncontrolled Type II, hypertension, elevated cholesterol, elevated LFTs, and glycosuria. *Id.* Plaintiff was not cleared for DOT certification due to uncontrolled diabetes; he was instructed to return the following week for reevaluation. *Id.* Plaintiff returned to Doctors Care on October 11, 2008, seeking a DOT physical. Tr. 264. Plaintiff was assessed with Type II diabetes, noted as "poorly-controlled." Tr. 264. He was instructed to diet, exercise, continue his medication, and return in six-to-eight weeks for reevaluation. *Id.*

Plaintiff was seen by doctors[2] at Franklin C. Fetter Family Health Center ("Fetter") on September 12, 2009; May 18, 2010; and July 8, 2010. Tr. 284-87. On July 8, 2010, a doctor from Fetter completed certification forms related to Plaintiff's hypertension and hyperglycemia. Tr. 280-81. The doctor certified that he was treating Plaintiff for hypertension and that Plaintiff was capable of driving a commercial motor vehicle. Tr. 280. The doctor also certified that despite being on insulin, Plaintiff was capable of driving a commercial motor vehicle. Tr. 281. Plaintiff returned to Fetter on November 22, 2010, for diabetic follow up. Tr. 334. Plaintiff complained of pain in his back, hip, and legs; difficulty standing; and cold feet. *Id.* The assessment included diabetes, hypertension, and anemia.[3] The doctor ordered lab work, ordered modifications to Plaintiff's diet and lifestyle, and referred him to an ophthalmologist and nephrologist. *Id.*

On November 26, 2010, Harriett R. Steinert, M.D. completed a Social Security Comprehensive Medical Exam of Plaintiff. Tr. 301-02. On physical examination, Plaintiff's visual acuity for both eyes was noted as 20/25 without glasses. Tr. 301. Plaintiff was "able to get on and off the exam table without difficulty by himself." Tr. 302. Dr. Steinert noted the following:

---

[2] The physician's name and notes are illegible.
[3] Other portions of the assessment are illegible.

> There is full range of motion of all joints in all four extremities. There is no tenderness to palpation of any joints, no swelling, no inflammation and no deformity. There are no sensory or motor deficits in any extremity. There is no muscle atrophy. Grip strength is normal and equal bilaterally (5/5). There are normal and equal fine motor and gross motor skills in both hands. He has no difficulty with the buttons on his shirt. Deep tendon reflexes are equal and normal in all extremities. Peripheral pulses are normal and equal in all extremities. There is no pedal edema in either lower extremity. The patient can flex at the waist to 90 degrees, extend fully and laterally flex fully, all with pain. There is no tenderness to palpation of the spine or paraspinous muscles. Straight leg raises are negative bilaterally. The patient is able to walk across the room without an assist device with normal gait. The patient can walk on his toes but not on his heels. The patient is oriented to person, place, and time. The patient is capable of handling his own personal financial and legal affairs.

Tr. 302.  With regard to Plaintiff's limitations of activities of daily living ("ADLs") and work activity, Dr. Steinert noted that Plaintiff has "pain in his lumbar spine and right hip all of the time" and syncope that had not been evaluated. *Id.* Dr. Steinert diagnosed Plaintiff with hypertension, dyslipidemia, diabetes with neuropathy and nephropathy, insomnia, and possible anxiety. *Id.*

Medical consultant Olin Hamrick, Jr., Ph.D. completed a Psychiatric Review Technique Form regarding Plaintiff on December 1, 2010, and found Plaintiff had "No Medically Determinable Impairment." Tr. 303-16. In his consultant's notes, Dr. Hamrick recounted Dr. Steinert's statements that Plaintiff may have possible anxiety, and that Plaintiff was capable of managing his own personal and legal affairs. Tr. 315. Dr. Hamrick listed Plaintiff's ADLs as the ability to take public transportation and the ability to drive. He also noted that Plaintiff talked to family three-to-four times a week, was able to prepare his own meals daily, and needed no reminders for grooming needs. *Id.* Dr. Hamrick concluded by noting the following:

> Alleges to have trouble getting along with others. Alleges not being able to handle money but says he shops in stores for food[,] able to pay bills, count change, handle a checking and a savings account. CE report says he can handle his own funds so his allegation is not consistent and therefore not credible.

4

*Id.*

On December 1, 2010, William Cain, M.D., a non-examining state agency physician, reviewed the record and assessed Plaintiff's physical residual functional capacity ("RFC"). Tr. 317-24. Dr. Cain found that Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, walking/standing/sitting at least six hours in an eight-hour workday (with normal breaks), and unlimited restrictions for pushing and/or pulling. Tr. 318. He found that Plaintiff could never climb ramps, stairs, ladders, ropes, or scaffolds, but could frequently balance, stoop, kneel, crouch, and crawl. Tr. 319. Dr. Cain found no manipulative, visual, communicative, or environmental limitations, other than Plaintiff should avoid all exposure to hazards such as machinery and heights. Tr. 320-21. He also limited Plaintiff to "no commercial driving nor (sic) unprotected heights." Tr. 321.   With regard to the severity of Plaintiff's symptoms and its alleged effect on function, Dr. Cain opined:

> Claimant alleges joint pain in his fingers and it is hard to button up shirts and pants. Is not credible because the CE report says [claimant] has 5/5 grip strength with no difficulty buttoning shirt. Normal and equal fine and motor skills. Reported using a cane because he falls all the time. [H]owever had no assistive device at the CE exam—able to walk across the room with normal gait.

Tr. 322.

On March 29, 2011, Joseph Gonzalez, M.D., a non-examining state agency physician, reviewed the record and assessed Plaintiff's physical RFC. Tr. 336-43. Dr. Gonzalez found that Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently; walking, standing, and sitting at least six hours in an eight-hour workday (with normal breaks); and had unlimited restrictions for pushing or pulling, noting that Plaintiff's use of a cane was "not obligatory." Tr. 337.  Dr. Gonzalez also found Plaintiff could frequently climb ramp/stairs, and occasionally climb ladder/rope/scaffolds. Tr. 338.  He also found Plaintiff could frequently

balance, stoop, kneel, crouch, and crawl. *Id.* Dr. Gonzalez found no manipulative, visual, communicative, or environmental limitations, noting that Plaintiff's syncope was not supported by physical examination, and no "neuro musc" deficits. Tr. 339-40.  As to the severity of Plaintiff's symptoms, Dr. Gonzalez noted there were "no objective findings to support his subjective c/o's." Tr. 341.

Plaintiff returned to Fetter in April and August 2011.[4] Tr. 345-46.   On   May   31,   2011, Charleston County EMS responded to a call for "breathing problems." Tr. 360.  Plaintiff was the occupant of a vehicle that caught fire; he was treated for hyperventilation and transported to St. Francis Hospital. Tr. 360, 362.  On November 21, 2011, Charleston County EMS responded to a call related to a "diabetic problem." Tr. 353.  Plaintiff was found "sitting in a chair slow to respond and confused." *Id.* He was assessed with hypoglycemia and administered medication. *Id.* Plaintiff refused transport to an emergency department, stating "he would rather monitor his own condition." *Id.* Plaintiff returned to Fetter on November 23, 2011, for follow-up and refills on his medications. Tr. 344. Part of his assessment included severe hypertension. *Id.*

C.  The Administrative Hearing

Plaintiff and his counsel appeared at his administrative hearing on December 9, 2011. *See* Tr. 25-40. Before Plaintiff testified, his counsel explained that Plaintiff's alleged onset date was a few days before he turned 55 years old, and asked to amend the record to consider Plaintiff of advanced age. Tr. 27. The ALJ agreed to consider Plaintiff "to be 55 at the onset." *Id.*

Plaintiff testified that he was 56 years old, and was married, but separated from his spouse. Tr. 28. Plaintiff testified that he sometimes lived with his sister, but for the past three or four months he had lived in his automobile. Tr. 29. Plaintiff stated that he sometimes did odd jobs to earn a little money, and he had no medical insurance or Medicaid. *Id.* Plaintiff testified

---

[4] The treatment notes are illegible.

that he completed school through the eighth grade, quit school in the ninth grade, and did not

obtain his GED. Tr. 29-30. Plaintiff told the ALJ that in his prior work as a truck driver he drove

"all over the United States" and was sometimes responsible for loading or unloading very light

items of ten pounds or less. Tr. 30.  Plaintiff testified that he is unable to return to trucking

because medical examiners will not "pass" him on his physical exam to get a DOT certificate.

Tr. 31. Plaintiff also testified that he failed the physical exam because he was unable to pass the

eye exam. Tr. 32. Plaintiff stated he is prohibited from driving a truck because he takes insulin.

Tr. 32. Plaintiff testified that he takes insulin injections twice a day, daily oral medication for his

diabetes, blood pressure medicines, cholesterol pills, and sleeping pills. Tr. 32. He said that he

gets help from churches and his family to pay for the medication. Tr. 33.  Plaintiff testified that

the diabetes causes problems with his feet and legs, and he recently attempted to get treatment

for a foot ulcer but was turned away because he had no insurance. Tr. 33-34. Plaintiff stated that

within the past six months, on two different occasions, he had lost consciousness because his

blood sugar dropped. Tr. 36-37. When EMS responded they gave him an insulin "cocktail" and

he regained consciousness. *Id.* Plaintiff declined to go to the hospital on either occasion because

he did not have any insurance. Tr. 37. Plaintiff testified that he seemed to be "passing out" once

a month "for no reason." Tr. 38. Plaintiff stated he tries to "catch it" by eating something sweet,

but most of the time he is unable to catch it and he passes out. *Id.* Plaintiff also noted that his

doctor had changed his blood pressure medicine. *Id.* Plaintiff testified that he has problems

falling asleep at night and that he takes sleeping pills. Tr. 39. He also stated that his doctor did

not "like the result of [his] kidney and [he had] to see a kidney specialist." *Id.* Plaintiff told the

doctor he had "no insurance and no money to see a kidney specialist." *Id.* Plaintiff also testified

that he had a lot of pain in his back and right hip. *Id.* Plaintiff stated that if he could get a DOT

certificate he would go back to driving a truck until he was old enough to retire. *Id.*

The ALJ left the record open until January 5, 2012, to allow Plaintiff's attorney to

supplement the medical record.[5] Tr. 40.

II. Discussion

A. The ALJ's Findings

In his January 20, 2012 decision, the ALJ made the following findings of fact and

conclusions of law:

1.      The claimant meets the insured status requirements of the Social Security
        Act through December 31, 2015.

2.      The claimant has not engaged in substantial gainful activity since June 29,
        2010, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et
        seq.*).

3.      The claimant has the following severe impairments: diabetes and
        hypertension (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments
        that meets or medically equals the severity of one of the listed
        impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
        404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that
        the claimant has the residual functional capacity to perform the full range
        of medium[1] work as defined in 20 CFR 404.1567(c) and 416.967(c).

6.      The claimant is unable to perform any past relevant work (20 CFR
        404.1565 and 416.965).

7.      The claimant was born on July 4, 1955 and was 54 years old, which is
        defined as an individual closely approaching advanced age, on the alleged
        disability onset date. The claimant subsequently changed age category to
        advanced age (20 CFR 404.1563 and 416.963).

---

[5] Subsequent medical records included the April, August, and November 2011 treatment notes, lab results, and consultation report from Fetter, Tr. 344-50, and the May and November 2011 EMS reports, Tr. 351-61.

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from June 29, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[1]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, standing for 6 hours in an 8-hour workday, walking for 6 hours in an 8-hour workday, and sitting for 6 hours in an 8-hour workday. If someone can do medium work, we determine that he can also do sedentary and light work.

Tr. 14-19.

B.  Legal Framework

1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[6] (4) whether such impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

---

[6] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

## 2.   The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*,

11

434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to

assure there is a sound foundation for the Commissioner's findings, and that his conclusion is

rational.  *See Vitek*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th

Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that

decision must be affirmed "even should the court disagree with such decision."  *Blalock v.

Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### C.  Analysis

Plaintiff argues that the ALJ erred by: (1) relying solely on the Medical-Vocational

Guidelines; and (2) failing to consider the combined effects of Plaintiff's severe and non-severe

impairments.  Pl's Br., ECF No. 15.

### 1.  The Medical-Vocational Guidelines

Plaintiff's first allegation of error is that the ALJ's use of Medical-Vocational Grid rules

203.12 and 203.19[7] was improper. Plaintiff asserts that the "Grids do not apply to a claimant who

suffers from severe non-exertional impairments or who cannot perform the full range of work

activity within a Grid category." Pl.'s Br. 5-6. The Commissioner argues that substantial

evidence supports the ALJ's finding that Plaintiff retained the RFC to perform medium work.

Def.'s Br. 8, ECF No. 16.

An ALJ may determine that sufficient jobs exist by relying on the testimony of a

vocational expert ("VE") or by relying on the Medical-Vocational Guidelines. The Medical-

Vocational Guidelines, also referred to as "the Grids," are guidelines, located at 20 C.F.R. Part

404, Subpart P, appendix 2. *See Heckler v. Campbell*, 461 U.S. at 461. The Grids consist of three

---

[7] Rule 203.12 references a person of advanced age, with limited or less education, whose previous work experience was skilled or semi-skilled, and those skills are not transferable. Rule 203.19 references a person closely approaching advanced age, with limited or less education, whose previous work experience was skilled or semi-skilled, and those skills are not transferable. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 3.

"Tables," each representing a different RFC, including sedentary (Table 1), light (Table 2), and medium work (Table 3). *Id.* Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." *Id.* When the limitations and restrictions imposed by a claimant's impairment and related symptoms, such as pain, affect only the ability to meet the strength demands of jobs such as sitting, standing, walking, lifting, carrying, pushing, and pulling, the claimant is considered to have only exertional limitations. *See* 20 CFR § 416.969a(b). A nonexertional limitation affects only a claimant's ability to meet the demands of jobs other than strength demands. 20 CFR § 416.969a(c). Nonexertional limitations may include difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentration; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing; difficulty tolerating some physical features of certain work settings; or difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id.*

If a nonexertional limitation rises to the level that it affects the claimant's RFC to perform work, even though he has the exertional capability to perform those jobs, then reliance on the Grids to determine whether the claimant is disabled is precluded. Rather, in those circumstances, the Commissioner has the burden to prove by expert vocational testimony—not the Grids—that specific jobs exist in the national economy that the claimant can perform. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983); *see also Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1985).

Here, the ALJ found that Plaintiff had the severe impairments of diabetes and hypertension. Tr. 14. In spite of these impairments, the ALJ determined Plaintiff retained the

RFC "to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." Tr. 15. The ALJ also found that Plaintiff was unable to perform his PRW because that "work has been eliminated due to his diabetes mellitus, which apparently prevents the claimant from keeping his commercial driver's license." Tr. 18. The ALJ considered Plaintiff's symptoms, his testimony regarding his medical treatment and ADLs, his medical treatment records, opinions of treating and evaluating physicians, and opinions of state agency medical consultants who found that Plaintiff was "limited to medium work activity with various limitations in climbing and exposure to hazards." Tr. 16-18 (citing to Dec. 1, 2010 Physical RFC Assessment of William Cain, M.D., Ex. 12F, Tr. 317-24; Mar. 29, 2011 Physical RFC Assessment of Joseph Gonzalez, M.D., Ex. 17F, Tr. 336-43). The ALJ agreed with the exertional assessments of the medical consultants but found the record did not warrant giving Plaintiff any further restrictions. Tr. 18.

Plaintiff noted that the ALJ "found that Plaintiff could perform the full range of medium work, [and] he also found that Plaintiff could not perform his past relevant work which was also performed at the medium exertion level." Pl.'s Br. 6. Plaintiff asserts that because he was unable to perform his "past relevant medium exertion level work, Plaintiff clearly was not able to perform the full range of medium work," and therefore use of the Grid 203 rules did not apply. *Id.* Plaintiff also asserts that the ALJ's finding concerning his inability to perform PRW was based on his severe non-exertional impairment of diabetes and therefore "reliance on the Grids was not appropriate." Pl.'s Br. 7. Plaintiff asserts that it is "the non-exertional limitations from diabetes (i.e. dizziness, black outs, vision problems) that cause an individual to not be medically qualified for a truck driver's job." Pl.'s Br. 6. Plaintiff argues that because the ALJ did not indicate that Plaintiff's severe impairment of diabetes caused any exertional limitations, the

14

ALJ's finding that he is unable to perform PRW is "clear and convincing evidence that Plaintiff has severe non-exertional impairments and reliance on the Grids was not appropriate." Pl.'s Br. 7. The Commissioner argues that "Plaintiff's restriction against commercial driving is not a nonexertional limitation" because it is not "medically determinable." Def.'s Br. 10 (citing SSR 85-15, 1985 WL 56857, at *2 ("A nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction.")). The Commissioner asserts that Plaintiff's commercial driving restriction is a "matter of his legal eligibility, not his physical and mental capacity, to perform commercial driving under the criteria set by the State." Def.'s Br. 10. Plaintiff disagrees with the Commissioner's assertion that his "insulin dependent severe diabetes imposed only a 'legal' limitation" on his ability to work, and expert vocational testimony is needed to establish the impact of his impairments on the range of medium level occupations. Pl.'s Reply Br. 3-4, ECF No. 17.

The ALJ's RFC assessment should be based on all relevant evidence. 20 C.F.R. § 404.1545(a); 416.945(a). Social Security Ruling 96-8P requires that the RFC assessment "address both the exertional and nonexertional capacities of the individual." SSR 96-8P, 1996 WL 374184 at *5. "(N)onexertional capacity must be expressed in terms of work-related functions." *Id.* at *6. The RFC must also "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ must discuss the claimant's ability to "perform sustained work activities in an ordinary work setting" on a regular work schedule. *Id.*

The undersigned finds that the ALJ's RFC assessment and finding that Plaintiff had the RFC for medium work is not supported by substantial evidence. Although the ALJ discussed

15

Plaintiff's complaints related to his alleged nonexertional limitations, it is unclear what impact, if any, these impairments had on his RFC. The ALJ does not address whether he considered Plaintiff's inability to perform PRW based on his diabetes mellitus as strictly a legal impediment, as the Commissioner contends, or a nonexertional medical impairment. Furthermore, as discussed below, it does not appear that the ALJ considered the effect Plaintiff's combined impairments might have on his ability to perform all medium-level work. Once that is determined, it may be necessary for the ALJ to obtain VE testimony. "Given no medically determinable impairment which limits exertion, the first issue is how much the person's occupational base—the entire exertional span from sedentary work through heavy (or very heavy) work—is reduced by the effects of the nonexertional impairment(s) . . . [i]n many cases, a decisionmaker will need to consult a vocational resource." SSR 85-15, 1985 WL 56857 at *3.

### 2.  Combination of Impairments

Plaintiff's second allegation of error is the ALJ failed to consider the combined effects of Plaintiff's severe and non-severe impairments. Specifically, Plaintiff alleges that the ALJ disregarded Plaintiff's lumbar spine and right hip pain, syncope and dizziness, and neuropathy. Pl.'s Br. 8. The Commissioner asserts the ALJ considered the combined effect of Plaintiff's impairments in reaching his RFC determination. Def.'s Br. 13.

In determining whether Plaintiff is disabled, the ALJ must consider the combined effect of Plaintiff's severe and nonsevere medically determinable impairments. *See Walker*, 889 F.2d at 50. Even if the claimant's impairment or impairments in and of themselves are not "Listed impairments" that are considered disabling per se, the Commissioner must also "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); *see*

16

*also Walker*, 889 F.2d at 50 (finding the ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them."). "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." 889 F.2d at 50.

The Commissioner argues that the ALJ adequately considered the combined effect of Plaintiff's impairments because he stated in his decision that his finding regarding Plaintiff's RFC was based on his "careful consideration of the entire record" and that he had considered "all symptoms to the extent these symptoms can reasonably be accepted as consistent with the objective medical evidence." Def.'s Br. 13. Further, she submits that the ALJ specifically accounted for Plaintiff's claims of dizziness, syncope, back and hip pain, neuropathy, and insomnia in his RFC analysis. Def.'s Br. 14, citing Tr. 16-17.

The undersigned does not agree with the Commissioner's argument that the ALJ adequately considered all of Plaintiff's impairments in combination. *Walker*, 889 F.2d at 50, requires that the Commissioner: (a) consider Plaintiff's various impairments in combination; and (b) explain his consideration and findings regarding the combined impairments in a manner that permits the court to review those findings on appeal. Here, the ALJ found that Plaintiff had two severe impairments, diabetes and hypertension. Tr. 14. The ALJ does not specifically identify any non-severe impairments, although he determined Plaintiff's diagnosis of "possible" anxiety was not a medically determinable impairment, and that despite a diagnosis of peripheral neuropathy, the record reflected Plaintiff was "capable of ambulating effectively." Tr. 15.

The ALJ did not adequately consider and discuss any combined impact of all of Plaintiff's impairments, in violation of Fourth Circuit precedent. When, as here, there are multiple impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's 'ability to engage in

17

substantial gainful activity.'" *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. *Id.* The cumulative or synergistic effect of the various impairments on the claimant's ability to work must be analyzed. *DeLoatche v. Heckler*, 715 F.2d 148,150 (4th Cir. 1983). In-turn consideration of multiple impairments is insufficient, as illustrated by the Fourth Circuit's finding in *Walker* that, although the ALJ "discussed each of claimant's impairments[, he] failed to analyze the cumulative effect the impairments had on the claimant's ability to work." 889 F.2d at 50.

In *Walker*, the Fourth Circuit remanded plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the claimant's impairments. *See Walker*, 889 F.2d at 49-50. The ALJ found that the claimant suffered from several ailments and noted the effect or non-effect of each impairment separately. *See id.* The ALJ found that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4." Walker, 889 F.2d at 49; *cf.* Tr. 15, Finding 4 (the ALJ using the same boilerplate language). The Fourth Circuit held that the ALJ in that case had failed to adequately consider and explain his finding because he did not analyze or explain his evaluation of the cumulative effect of the claimant's impairments. *See id.* at 49-50.

Similarly, the ALJ in this action failed to adequately explain his evaluation of the combined effects of Plaintiff's impairments. The ALJ found that Plaintiff suffers from two severe impairments. Tr. 14. The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15. The ALJ considered whether Plaintiff satisfied

18

one of the listings related to complications from diabetes mellitus or related to hypertension in determining Plaintiff did not satisfy one of the listings regarding physical impairments. *Id.* Although the ALJ specifically states he considered the cumulative effects of Plaintiff's impairments pursuant to *Walker*, he does not include a discussion of the cumulative effects of the impairments described by Plaintiff, which included back pain, insomnia, hip pain, syncope, and neuropathy.

In discussing Plaintiff's impairments when making his RFC assessment, the ALJ noted that in spite of Plaintiff's "allegations of disabling impairments, the medical record reflects minimal medical treatment for his impairments." Tr. 16. The ALJ also noted that Plaintiff's treatment records reflect that for some impairments Plaintiff complained to his treating physician only once or "on a couple of occasions" and "experienced relatively minimal limitations resulting from these conditions." Tr. 16-17.  Despite the record evidence of at least some basis for Plaintiff's impairments, the ALJ does not discuss them in combination. In this recommendation, the court does not presume, nor intend to imply, that it can make medical determinations that there is a specific combination of Plaintiff's various impairments that indicates a finding that Plaintiff meets or medically equals a listed impairment or otherwise is entitled to DIB or SSI. However, this record evidence, considered in tandem with the ALJ's failure to consider—or, at least his failure to explain his consideration of—Plaintiff's impairments in combination, does not permit the undersigned to recommend a finding that the ALJ's determination is based on substantial evidence. Accordingly, Plaintiff's claim should be remanded to the Commissioner for proper explanation of the ALJ's evaluation of the combined effect of Plaintiff's impairments, severe and nonsevere. *See Walker*, 889 F.2d at 50; *see also Alonzeau v. Astrue*, C/A No. 0:06-2926-MBS, 2008 WL 313786 (remanded because ALJ did not

19

discuss consideration of claimant's impairments in combination in determining whether claimant met or medically equaled a listed impairment).

   III. Conclusion and Recommendation

   The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the Commissioner's finding is supported by substantial evidence or is without legal error.

   Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as detailed within.

   IT IS SO RECOMMENDED.


April 10, 2014                                      Kaymani D. West
Florence, South Carolina                  United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**